IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TOWNSHIP OF BENSALEM** | : |
| *Plaintiff,* | : |
| v. | : CIVIL NO. 23-5113 |
| **LENNAR MPA, LLC et al.,** *Defendants.* | : |

Scott, J.                                                                                                 April 22, 2025

### MEMORANDUM

This dispute comes from a two-and-a-half-page contract between Plaintiff Township of Bensalem ("Bensalem") and Defendants Lennar MPA, LLC, Lennar MPA WIP, LLC, and Lennar Corporation (collectively, "Lennar"). At its most basic level, the contract, known as the Revised Impact Fee Agreement Waterside – Phase 2 and Phase 3 ("RIFA," ECF No. 12-4), sets out the terms under which Lennar is to construct an improvement to a segment of State Road in Bensalem, Pennsylvania ("State Road improvement project" or "SRIP") in exchange for the Township's assistance in funding the improvement and its waiver of certain fees related to Lennar's development project to which the Township would otherwise be entitled. Lennar argues that it exercised its termination rights under the RIFA and, upon providing a contractually determined sum to Bensalem, no longer has any obligations regarding the SRIP. Bensalem argues that no such

1

termination right exists and that Lennar has materially breached the RIFA by refusing to construct the improvement to State Road promptly and expeditiously.

Lennar has moved for partial judgment on the pleadings on Count I of its counterclaims, which seeks a declaratory judgment that Lennar has, among other things, "duly terminated" the RIFA. ECF No. 4 at ¶¶ 50-61. Bensalem has moved for judgment on the pleadings on the entirety of Lennar's counterclaims, pointing out that all of Lennar's dominoes stand or fall together insofar as each counterclaim hinges on the propriety of Lennar's purported termination. ECF No. 13 ¶ 19. Because the RIFA is ambiguous and because the Court will likely benefit from discovery related to the issues discussed below, the Court denies Lennar's motion for partial judgment on the pleadings and denies Bensalem's motion for judgment on the pleadings.

I. **Background**

    A. Factual Background

        1. The RIFA Agreement

Lennar took over from a prior developer the responsibility for Waterside, a residential land development project located between State Road and the Delaware River in Bensalem, Pennsylvania. ECF No. 1-1 ("Complaint") ¶¶1-2; 4-9. State Road is the only street that provides access to Waterside. ECF 13-2 at 3 n.1. To complete the project and to comply with various local ordinances, Lennar entered into agreements with Bensalem. One such agreement was the RIFA, which modified an earlier fee agreement between the Parties and was signed in October 2019. Comp. ¶ 35.

According to the RIFA, Lennar "agreed to construct the entire State Road Improvement Project subject to the terms of this Agreement," RIFA ¶ 1, and Bensalem agreed to reimburse Lennar for the cost of the completion for any amount in excess of $1,128,112.00. RIFA ¶ 2. Paragraph 4 of the RIFA specifies that Lennar "shall act promptly in commencement and

completion" of the SRIP and that Lennar "shall comply with all PennDOT requirements, directions and procedures necessary for the expeditious completion" of the SRIP. Finally, Paragraph 5—the locus of the present dispute—states in its entirety: "In the event that this Agreement is terminated prior to the approved completion of Phase 2 and Phase 3, then all unpaid Phase 2 and Phase 3 recreation fees along with impact fees shall become due and owing." RIFA ¶ 5.

### 2. Lennar's Alleged Termination of the Agreement and Bensalem's Refusal to Issue Use & Occupancy Certificates

On December 21, 2023—more than four years after the Parties signed the RIFA—Lennar sent Bensalem a letter, informing Bensalem that Lennar "has exercised its rights" under the RIFA and has terminated the Agreement. ECF 12-6 at 3. Additionally, Lennar's letter calculated the amount owed to Bensalem as $720,836.80, which, when combined with the $407,275.20 already collected by the Township, purportedly equals the total financial burden for which Lennar would have been responsible in constructing the SRIP (and after which Bensalem would be financially responsible) under the RIFA. *Id.*

Bensalem never responded directly to the letter. ECF 4 ¶ 12. Instead, Lennar alleges that Bensalem withheld issuing two Use & Occupancy Certificates that are needed for Lennar to complete agreements to sell two residences within the Waterside development.

### B. Procedural History

Bensalem filed this action in the Pennsylvania Court of Common Pleas approximately three weeks before Lennar sent its December 21 termination letter. Lennar then removed this action to federal court pursuant to 28 U.S.C. § 1332 on December 26, 2023.

Bensalem's Complaint seeks to void past transfers and enjoin future transfers between the various Lennar entities under Pennsylvania's Voidable Transactions Act, 12 Pa.S.C.A. § 5101(b) (Count I), to obtain relief under the theory that Lennar's failure to build the SRIP constitutes a

breach of contract (Count II) or, in the alternative, specific performance from Lennar for breach of contract (Count III), or, also in the alternative, promissory estoppel under the theory that Lennar has made certain promises with respect to constructing the SRIP (Count IV).

On January 4, 2024, Lennar filed its answer to Bensalem's Complaint and its own counterclaims. ECF No. 4. Lennar seeks declaratory judgment that it, among other things, has duly terminated the RIFA (Count I), declaratory judgment that Bensalem has no legal basis to withhold the Use & Occupancy Certificates and that such certificates be released immediately to Lennar (Count II), declaratory judgment that a certain Letter of Credit sent by Bensalem to Lennar be declared null and void (Count III), relief under the theory that Bensalem has tortiously interfered with Lennar's contracts to sell certain Waterside residences (Count IV), relief under the theory that Bensalem's Complaint and its refusal to issue the remaining Use & Occupancy certificates amounts to abuse of process (Count V), and an injunction that orders Bensalem to stop withholding the Use & Occupancy certificates (Count VI).

On April 5, 2024, Lennar filed its motion for partial judgment on the pleadings, namely seeking judgment as a matter of law on Count I of its counterclaims. ECF No. 12. On the same day, Bensalem filed its own motion for judgment on the pleadings, seeking judgment as a matter of law in its favor on the entirety of Lennar's counterclaims. ECF No. 13. Each party filed responses to the respective motions on May 3, 2024. ECF Nos. 16, 17. Both motions are fully briefed and ripe for disposition.

## II.    Legal Standard

Motions for judgment on the pleadings are "analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal citations and quotation marks omitted). Accordingly, the court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the

light most favorable to the nonmoving party, and may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* (internal citations and quotation marks omitted). "In deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. *Id.* (internal citations and quotation marks omitted); *Zucker v. Quasha*, 891 F. Supp. 1010, 1013 (D.N.J. 1995) (courts may consider documents to which parties refer in the pleadings on a motion for judgment on the pleadings). Pursuant to Fed. R. Civ. P. 12(d), if the Court considers any additional documents outside the pleadings (other than those integral to or explicitly relied upon in the complaint), the motion must be treated as one for summary judgment.

"Where both parties file motions for judgment on the pleadings, each party's right to a judgment must be determined from a consideration of the party's own motion as though no motion had been filed by the other party." *Essential Utilities, Inc. v. Swiss Re Group*, 654 F. Supp. 3d 476, 480 (E.D. Pa. 2023) (quoting 61 Am. Jur. 2d, Pleading § 499), *aff'd sub nom. Essential Utilities, Inc. v. Swiss Re Corp. Sols. Elite Ins. Corp.*, 2025 WL 32813 (3d Cir. 2025). As an additional wrinkle, when a party moves for judgment on its own pleadings, the Court strips the allegations that are denied by the responding party. 61 Am. Jur. 2d, Pleading § 497; *see also United Food & Commercial Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022); *Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir. 1949). Here, because Lennar moves for partial judgment on its own counterclaims, the Court considers only the well-pled allegations that Bensalem has not denied in its answer to those counterclaims (ECF No. 7) when deciding Lennar's

motion. By contrast, for deciding Bensalem's motion for judgment on Lennar's pleadings, the Court considers the entirety of Lennar's pleadings.

Because Lennar's and Bensalem's motions for judgment on the pleadings are focused on a contract dispute, a word about contract interpretation is also in order. Under Pennsylvania law, "[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (internal citation and quotation marks omitted). "[T]he intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning." *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). Additionally, "[w]hen interpreting the contract, the entire contract should be read as a whole . . . [so as to] give effect to all of its provisions . . . [while being sure] not to interpret one provision of a contract in a manner which results in another portion being annulled." *EMD Performance Materials Corp. v. Marque of Brands Ams. LLC*, 578 F.Supp.3d 670, 678 (E.D. Pa. 2022) (internal citation and quotation marks omitted).

To the extent that contractual language is unambiguous, the Court interprets the contract as a matter of law; but to the extent the contract is "ambiguous and susceptible to different constructions," contract interpretation transforms into a factual matter. *Id.* "A contract will be found to be ambiguous . . . if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more sense than one and is obscure in meaning through indefiniteness of expression or has a double meaning." *Z&L Lumber Co. v. Nordquist*, 502 A.2d 697, 700 (Pa. 1985). When ambiguity exists, the Court may turn to extrinsic evidence to clarify or resolve the ambiguity. *Kripp*, 849 A.2d at 1163.

**III.    Discussion**

A. Lennar's Motion for Judgment on the Pleadings

Lennar moves for partial judgment on its counterclaims, requesting the Court to declare that Lennar has properly terminated its agreement with Bensalem.

To support its request, Lennar asks the Court to adopt its interpretation of the RIFA, according to which Lennar has a unilateral right to terminate the agreement as long as it discharges its financial obligations to Bensalem in lieu of constructing the SRIP. ECF No. 12-1 at 5-6; ECF No. 17 at 11-12. Lennar locates this termination right in RIFA ¶ 5, which states in its entirety: "In the event that this Agreement is terminated prior to the approved completion of Phase 2 and Phase 3, then all unpaid Phase 2 and Phase 3 recreation fees along with impact fees shall become due and owing."

1. The Meaning Of "Terminated" In The RIFA Is Ambiguous

"Terminated" is used once in the RIFA, and the term is undefined throughout the contract. As discussed below, the RIFA provision that contains the word "terminated" is capable of different, reasonable constructions. Because the contract is so sparse and because there is nothing within the four corners of the contract to guide the Court's interpretation, the next step is to see whether the term's ordinary meaning can clarify the issue. Black's Law Dictionary defines "termination" as "the act of ending something." TERMINATION, Black's Law Dictionary (12th ed. 2024). Other dictionaries contain similar definitions. Ultimately, these dictionary definitions—serving as proxies for the term's ordinary meaning—cannot cure the RIFA's unclarity. Such definitions fail to specify what the parties dispute here—namely, what type of act (*e.g.*, a joint act, a unilateral one, or a third-party one) is proper to terminate the RIFA.

The Court cannot discern the Parties' intent in drafting RIFA ¶ 5 because the RIFA is not clear regarding when the Agreement may be properly terminated and the ordinary meaning of

"terminated" does not resolve the Parties' dispute. Accordingly, the Court finds that the meaning of "terminated" in the RIFA is ambiguous because of indefiniteness. Consequently, interpreting the RIFA is a material issue of fact, precluding any finding in favor of Lennar on its motion for judgment on the pleadings.

2. Lennar's Arguments

Lennar makes three arguments. First, in its briefing in support of its motion, Lennar suggests that the Court must adopt its interpretation lest the Court "violate[] one of the cardinal rules of contract interpretation" by rendering RIFA ¶ 5 superfluous. ECF No. 12-1 at 5 n.6. Second, Lennar argues that Bensalem has effectively conceded Lennar's position because Bensalem's Complaint alleges that "if the [RIFA] for [*sic*] is terminated for any reason prior to the completion" of the project, then all relevant fees become due and payable to Bensalem. *Id.*; ECF No. 1-1 ¶ 43. Third, in its briefing in opposition to Bensalem's motion, Lennar argues that its interpretation is permissible because the Parties did not explicitly prohibit such means of termination. ECF No. 17 at 11 ("Nowhere in the four corners of the RIFA is there any term or provision barring the unilateral termination of the RIFA by a party. The prohibition does not exist."). Not one of these arguments persuades the Court at this stage.

First, it does not follow that, should the Court decline to adopt Lennar's interpretation of RIFA ¶ 5 on termination, that the Court will "violate[] one of the cardinal rules of contract interpretation" and render that provision superfluous. ECF No. 12-1 at 5 n.6. As long as the provision has some substance that is consistent with the rest of the RIFA—not necessarily the substance Lennar prefers—then it will not be superfluous. There are reasonable interpretations of RIFA ¶ 5 that are distinct from Lennar's. Proper termination may mean termination when both Parties consent to termination; it may envision a *force majeure* scenario, where, say, if the plot of land on which Lennar was building suddenly becomes undevelopable, then the Agreement may be

8

terminated; and surely other plausible interpretations of RIFA ¶ 5 can be devised through skillful lawyering. For these reasons, Lennar's first argument fails to show that it is entitled to judgment as a matter of law on the pleadings.

Lennar's second argument begs the question. Paragraph 43 of Bensalem's Complaint discusses what happens when the Agreement is "terminated for any reason." ECF 1-1 ¶ 43. That statement does not concede that any reason at all is a basis to terminate but only that there exist legitimate reasons according to which the Agreement may be terminated. As Bensalem has made clear throughout its papers, its position is that Lennar has not terminated the agreement pursuant to a proper reason. *See, e.g.*, ECF No. 13-2 at 6-7. When properly contextualized, Paragraph 43 of the Complaint cannot shoulder the argumentative load that Lennar foists onto it.

Lennar's third argument has no limiting principle. Lennar's position appears to be that the failure to explicitly exclude a means of termination in the contract means that the Parties have agreed such a means of termination is contractually permissible. Thus, because the RIFA does not prohibit Lennar from terminating unilaterally, the RIFA necessarily permits Lennar to terminate unilaterally. But, by that same logic, because the RIFA does not prohibit a party from terminating the agreement if an elephant walks diagonally on State Road on a Wednesday in August, then a party may terminate the agreement once such an event occurs. And why may that party do so? Because, per Lennar's argument, the Parties did not explicitly exclude such a possibility in the RIFA. This absurdity reveals the logical flaw in Lennar's argument. Case law supports this Court's position, where other courts have rejected arguments that rely on "nothing in the [agreement] preclud[ing]" a certain right as a basis to find that such a right exists in the agreement itself. *See, e.g., Prime Victor Int'l Ltd. V. Simulacra Corp.*, 682 F. Supp. 3d 428, 444 (D. Del. 2023); *see also Bay Point Cap. Partners L.P. v. Fitness Recovery Holdings, LLC*, 2021 WL

5578705, at *5 (Del. Sup. Ct. Nov. 30, 2021) ("Had the parties intended such an extreme result [in their contract], they would have expressly stated [so].").

B. Bensalem's Motion for Judgment on the Pleadings

Bensalem moves for judgment on the pleadings on the entirety of Lennar's counterclaims. Bensalem's briefing—both in its affirmative motion for judgment on the pleadings and in its opposition to Lennar's motion—spends more space attempting to debunk Lennar's position than providing arguments for why Bensalem is entitled to judgment on the pleadings.

First, Bensalem argues that Lennar's interpretation of RIFA ¶ 5 is wrong and that Lennar's interpretation would render the contract illusory due to a lack of consideration. ECF No. 13-2 at 6-8. Second, Bensalem argues that Lennar's purported termination amounts to a material breach of the RIFA and that Lennar's failure to construct the SRIP "promptly" and "expeditiously" pursuant to RIFA ¶ 4 is an independent material breach. *Id.* at 13. Third, Bensalem argues that it has a statutory basis for withholding the Use and Occupancy certificates, which this Court presumes to be relevant to Bensalem's motion with respect to Lennar's counterclaims concerning tortious interference, abuse of process, and an injunction ordering Bensalem to issue the Use & Occupancy certificates. *Id.* at 13-16. Bensalem also offers additional arguments against Lennar's tortious interference and abuse of process claims, but Bensalem does not address Lennar's claim concerning declaratory judgment about the Letter of Credit.

As an initial matter, the Court notes that not one of Bensalem's arguments appears to support its affirmative motion for judgment on the pleadings. At most, Bensalem has elaborated on why it thinks the Court should deny Lennar's motion for judgment on the pleadings, which are arguments that Bensalem already makes in its opposition to Lennar's motion for judgment on the pleadings. But arguing that Lennar is not entitled to judgment on the pleadings does little to establish that Bensalem is entitled to judgment on the pleadings. In other words, Bensalem's

arguments fail to show that there remain no "material issue[s] of fact" and fail to show that Bensalem "is entitled to judgment as a matter of law." *Wolfington*, 935 F.3d at 195 (cleaned up).

Ultimately, however, the Court agrees—at least at the case's current posture—with Bensalem's observation that all Lennar's claims are predicated on its purported termination. ECF No. 13-2 at 2, 6. Accordingly, Bensalem's motion for judgment on the pleadings will be denied for the same reason that Lennar's motion is denied: the meaning of termination in the RIFA is a factual matter for which a judgment on the pleadings in favor of either party is inappropriate.

### IV.   Conclusion

For the reasons stated above, Defendant Lennar's motion for partial judgment on the pleadings and Plaintiff Bensalem's motion for judgment on the pleadings are denied. An appropriate Order will be entered.